W. M. WARD, Appellant,

v.

FIRST STATE BANK, Memphis, Texas, Appellee.

No. 9110.

Court of Civil Appeals of Texas, Amarillo.

Sept. 17, 1980.

Rehearing Denied Oct. 8, 1980.

Richard D. Bird, Childress, for appellant.

Williams, Broughton & Forbis, John T. Forbis, Childress, for appellee.

COUNTISS, Justice.

This is an appeal from a judgment obtained by appellee First State Bank of Memphis, Texas, (hereafter "the bank") against appellant, W. M. Ward, (hereafter "Ward") for the balance due on a secured note co–signed by Ward. The issue is whether the bank is entitled to a deficiency judgment against Ward when the bank (1) failed to give Ward reasonable notice of the sale of the repossessed collateral securing the note and, (2) failed to obtain a fact finding on the value of the collateral. Under the record before us, we affirm.

In 1974, Ward sold several trucks and trailers, a front end loader and a Railroad Commission trucking permit to Pat Kimbro for $25,000. Kimbro borrowed $30,000 from the bank, paid $25,000 to Ward and retained $5,000 for operating expenses. The note was secured by the property sold to Kimbro by Ward. Ward co–signed the note with Kimbro. The note was not paid when due. The bank took possession of the collateral, sold it without notice to Ward, applied the proceeds to the note and sued Ward and Kimbro for the balance due on the note. Ward responded with an answer alleging, among other things, that he was not given reasonable notice of sale of the collateral and that the bank failed to dispose of the collateral in a commercially reasonable manner. Ward also filed a cross–action against the bank seeking damages allegedly suffered because of the bank's failure to give notice and because of other alleged acts of wrongdoing by the bank. Default judgment was taken against Kimbro and the suit against Ward was tried before a jury.

At the trial, the bank's evidence valued the collateral at less than was received for it at the foreclosure sale. Ward's evidence valued the collateral at more than was received for it at the foreclosure sale–more, in fact, than the amount of the note or his selling price to Kimbro.

Five special issues were submitted to the jury. In response to the first issue, the jury found that the bank failed to give Ward reasonable notice of the sale of the repossessed collateral. The second issue inquired whether, from a preponderance of the evidence, the failure to give reasonable notice caused an actual loss to Ward. The jury answered "No." The third issue inquired whether, from a preponderance of the evidence, the bank failed to act in a commercially reasonable manner in the sale and disposition of the collateral. The jury again answered "No." The remaining issues, conditionally submitted, were not answered. Issues inquiring about the fair market val-

ue of the collateral were not requested or submitted. There were no objections to the charge by either party.

The trial court then rendered judgment in favor of the bank in the total sum of $19,788.95 for the deficiency due on the note, interest and attorney's fees. It also denied Ward any recovery on his cross ac-tion.[1]

In this court, Ward contends, by three points of error, that (1) the bank's failure to give Ward reasonable notice of the sale of the repossessed collateral absolutely prohib-its recovery by it of a deficiency judgment against Ward, (2) there are not sufficient jury findings to support the verdict and (3) there was "no evidence to support the ren-dition of said judgment." Ward argues the points collectively and we will consider them in the same manner. The substance of Ward's argument is two–fold: (1) we should adopt a rule absolutely barring re-covery of a deficiency judgment on a se-cured note if the creditor fails to give the debtor notice of sale of the collateral, and (2) even if we adopt a less stringent rule, in this case the creditor bank failed to request or obtain jury findings essential to its re-covery.

The jury found, and the evidence is virtu-ally undisputed, that the bank did not give Ward reasonable notice of the sale of the repossessed collateral. The bank's duty to proceed in a commercially reasonable man-ner and to give Ward reasonable notice is established by § 9.504(c) of the Uniform Commercial Code:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commer-cially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notifi-

---

1. The evidence on the bank's cause of action on the note was essentially undisputed and was not submitted to the jury. No complaint is brought forward in that regard.

cation of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

Tex.Bus. & Com.Code Ann. § 9.504(c) (Vernon Supp.1980).

Two lines of authority have developed in this country on the effect of the failure of a creditor to give the notice required by the foregoing Uniform Commercial Code section. One line holds that the failure creates an absolute bar to the recovery of a deficiency judgment by the creditor against any debtor who was not given reasonable notice.[2] The other approach does not prohibit recovery of a deficiency judgment, but places an additional evidentiary burden on the creditor. Proof by the debtor that the creditor failed to give reasonable notice creates a rebuttable presumption that the value of the collateral sold equaled the amount of the debt. In order to rebut the presumption, the creditor must then establish that the fair market value of the collateral sold was less than the amount of the debt. If that burden is carried, the creditor is entitled to recover a deficiency judgment.[3]

The latter view has been followed by the only Texas case directly in point on the issue, *O'Neil v. Mack Trucks, Inc.*, 533 S.W.2d 832, 836–837 (Tex.Civ.App.–El Paso 1975), *rev'd on other grounds*, 542 S.W.2d 112 (Tex.1976), *recalled and reissued*, 551 S.W.2d 32 (Tex.1977). The *O'Neil* case adopted a United States Court of Appeals decision prognosticating Texas law. *United States v. Whitehouse Plastics*, 501 F.2d 692 (5th Cir. 1974), *cert. denied mem., sub nom., Baker v. United States*, 421 U.S. 912, 95

S.Ct. 1566, 43 L.Ed.2d 777 (1975). The rule as stated in the *Whitehouse Plastics* case and adopted in the *O'Neil* case is far more reasonable than the simplistic "no notice, no deficiency" rule. A creditor who fails to give proper notice should incur the additional burden of proving the fair market value of the collateral in order to demonstrate that his failure to give notice did not harm the debtor. When he can carry that burden, he should not be prohibited from taking a deficiency judgment against the debtor. As stated in a case note analyzing the *O'Neil* case:

> The courts, obviously influenced by their own notions of fair play, have attempted to formulate a workable rule to protect the debtor from sham sales and at the same time to protect the secured creditor's right to a deficiency judgment. In order to effectuate this rule it is better to adopt a "rebuttable presumption" view and allow the courts to review each different fact situation rather than adopting a strict view that a failure, for any reason, to give 9.504(c) notice shall be a complete bar to a deficiency judgment. The strict view of "no notice, no deficiency" is undesirable because it is the debtor who initiates the misconduct, if any, by failing to pay his debt. Therefore, there is no reason to unduly penalize the secured creditor.

8 Tex.Tech.L.Rev. 560, 567 (1976).

Believing the "rebuttable presumption" rule to be the better rule, we hold that the bank's failure to give Ward notice of the proposed sale created a rebuttable presumption that the value of the collateral equaled the amount of the debt and placed on the bank the burden of proving that the fair market value of the collateral was less than the amount of the debt.[4]

---

**2.** See cases collected in footnote 3, *United States v. Whitehouse Plastics*, 501 F.2d 692, 695 (5th Cir. 1974), *cert. denied mem., sub nom., Baker v. United States*, 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975).

**3.** See cases collected in footnote 4, *United States v. Whitehouse Plastics, supra.*

**4.** A secondary problem occurs if the fair market value as determined by the fact finder is greater than the amount realized by the sale but less than the debt. In a case where reasonable notice was given, but the fair market value was found to be substantially more than the amount realized at the sale, recovery of the full deficiency was permitted. *Siboney Corp. v.*

Having determined the rule applicable to this case, we must next determine the effect of the absence of a finding of fair market value. The bank introduced evidence that the fair market value of the collateral was less than the note and less than was actually received for the collateral. Ward testified that the collateral was worth more than the amount of the note. Thus, a factual dispute was created on the fair market value of the collateral.

The bank did not request a special issue on the dispute, nor did Ward object to the failure of the trial court to submit the issue. Instead, after asking whether reasonable notice was given, the trial court inquired whether the failure to give notice harmed Ward and whether the bank failed to act in a commercially reasonable manner in the sale and disposition of the collateral. The court defined "commercially reasonable manner" as "a manner of sale which in method, time, place, terms and advertising is calculated to obtain a fair price for the collateral." Negative answers were given to the two latter inquiries.[5]

■ The question then is, whether the bank's failure to request a special issue on the fair market value of the collateral is a waiver of the bank's right of recovery on the note. We conclude that, on this record, it is not.

■ When there is no objection to the defective submission of a controlling issue constituting a component element of a ground of recovery or defense and judgment is rendered thereon, the judgment will not be reversed. The failure to object waives the complaint of defective submission. Tex.R.Civ.P. 274; *Allen v. American National Ins. Co.*, 380 S.W.2d 604, 609 (Tex. 1964). As was stated in *Panhandle & S. F. Ry. Co. v. Friend*, 91 S.W.2d 922, 930 (Tex. Civ.App.–Austin 1936, no writ): "Where, however, the ground [of recovery or defense] is submitted, however erroneously or incompletely, the parties are thereby put upon notice that the jury's answers to the issues actually submitted will form the basis of the court's judgment thereafter to be rendered thereon. It then becomes the duty of each party to point out errors of omission or commission, or be held estopped from thereafter urging them."

On the record before us, we are satisfied this case involves the defective submission of a controlling issue.[6] After inquiring whether Ward was given reasonable notice, the court inquired whether failure to give reasonable notice resulted in harm to Ward. The evidence in the record to which this issue is pertinent is the disputed evidence of the value of the collateral. While the issue is defective in terminology and misplaces the burden, it is apparent the parties were using this method of submission to ascertain whether the bank received fair market value for the collateral. Since he failed to object to the method of submission of the case Ward cannot complain of the defective submission in this court.

All points of error are overruled. The judgment of the trial court is affirmed.

*Chicago Pneumatic Tool Co.*, 572 S.W.2d 4, 8 (Tex.Civ.App.–Houston [1st Dist.] 1978, writ ref'd n. r. e.).

5. The burden of proof for an affirmative answer was placed on the debtor in each issue. Failure to dispose of collateral in a commercially reasonable manner has been treated as an affirmative defense, *McCollum v. Parkdale State Bank*, 566 S.W.2d 670, 674 (Tex.Civ. App.–Corpus Christi 1978, no writ), on which the debtor has the burden of proof. *Siboney Corp. v. Chicago Pneumatic Tool Co., supra*, at 7; *Pruske v. National Bank of Com. of San Antonio*, 533 S.W.2d 931, 935 (Tex.Civ.App.– San Antonio 1976, writ ref'd n. r. e.).

6. A similar result is reached, for a different reason, when a controlling issue is omitted entirely and it is one of a cluster of issues embodying a theory of recovery or defense. In that instance, the missing element will be implied, *i. e.*, deemed found, in support of the judgment. Tex.R.Civ.P. 279; *Allen v. American National Ins. Co., supra*, at 609. When, however, all issues referable to an independent ground of recovery or defense raised by pleading and evidence are not submitted, the ground of recovery or defense is waived. 3 R. McDonald, Texas Civil Practice § 12.36.2.–B (1970).